### In re GREENFIELD.
Patent Appeal No. 2329.

Court of Customs and Patent Appeals.
May 28, 1930.

Edmund G. Borden, of New York City (Kenneth I. White, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Nine claims of appellant's application are before us on appeal from a decision of the Board of Appeals of the Patent Office sustaining the decision of the Examiner rejecting them, to wit, Nos. 13, 47–50, and 53–56.

First and last during the pendency of the matter in the Patent Office a large number of claims were presented, some of which were allowed, others withdrawn, and others rejected which were not appealed here.

The application relates to "certain new and useful improvements in regulation of combustion of fuel in furnaces," or, to be more specific, to a system for feeding oil to boiler furnaces in an oil burning plant and for controlling combustion of the oil.

The Examiner rejected claim 13, citing as reference a prior patent to applicant Greenfield, No. 1,423,764, of July 25, 1922. This was affirmed by the Board.

As to claims 47–50 and 53–56, the Examiner held that applicant was not entitled to make them. The Board reversed this holding but rejected the claims on prior art, citing a number of patents which will be hereinafter more specifically referred to.

Claim 13 reads as follows: "13. In a fuel-oil feeding device for a boiler furnace, the combination with a burner through which fuel is supplied to the furnace for generating steam, of an oil stand pipe extending upwardly from the burner, means for maintaining a head of oil in said stand pipe over said burner and means for increasing the head of oil in the stand-pipe in proportional relation with the fall of steam pressure in the boiler, said means including a chamber containing oil under a constant head, a conduit leading from said chamber to the stand-pipe, the outlet end of said conduit being in substantially the same horizontal plane as the upper oil level in said chamber, and means for exerting a boiler-pressure-controlled pressure on the oil in said chamber to cause the oil to flow to the stand-pipe."

Appellant here insists that the rejection of the claim upon his prior patent was error because, among other reasons, "there is no apparatus element shown or described in the Greenfield patent which is in any way the equivalent of, or performs the same functions as the vent (boiler governor) valve 112 of the apparatus of the present invention."

The vent valve in the claim, as we understand it, is claimed to maintain an inverse proportional relation between the head of oil in the standpipe over the burner and the boiler steam pressure, and appellant insists that the patent "contemplates the exact opposite of this procedure, i. e. it contemplates maintaining a direct proportional relation between the supply of oil to the burner and the boiler steam pressure," and he quotes from the patent specification in support of the contention.

The Solicitor for the Patent Office insists that the language of the specification upon which appellant relies has reference to the steam pressure in the feed tank and not the pressure in the boiler; that as the "boiler pressure falls * * * the pressure in the feed tank builds up," which is the operation described in claim 13, and, therefore, insists on the applicability of the reference.

Another feature of claim 13 which is urged by appellant as constituting invention over his prior patent is that the outlet end of the conduit leading from the oil contained in the chamber to the standpipe is in substantially the same horizontal plane as the upper oil level in the chamber, whereas this condition does not exist in his patent. The Board found this difference to exist but held that the disclosure of the application on this feature did not constitute invention.

We are in doubt as to whether appellant has succeeded in overcoming the presumption of correctness attaching to the concurring findings of the Patent Office tribunals relative to this claim and, in view of the fact that we deem it proper to remand this case for a restudy of claim 56, for reasons to be later discussed, we think it not improper to refrain from a definite finding upon it, and to remand claim 13 also for reconsideration by the Patent Office experts.

Claim 49 appears to be illustrative of claims 47 to 50, inclusive. It reads: "In a furnace, means for supplying fluid fuel to the furnace, a source of atomizing fluid under variable pressure, means for supplying the atomizing fluids at a substantially constant pressure, means for controlling the rate of supply of atomizing fluid in accordance with the rate of supply of fluid fuel, and means for varying the ratio of the rate of supply of atomizing fluid to the rate of supply of fluid fuel."

Claims 47–50 are stated to have been copied by appellant, during the pendency of his application, from a patent to McLean, No. 1,610,303, with a request that applicant be granted an interference on them.

They were rejected by the Examiner, first, in a decision of March 22, 1927, "as being for matter not disclosed," and with a further statement citing Ferguson. In a later decision of April 15, 1927, by the same Examiner it was stated that "claims * * * 47 to 50 * * * are rejected on the art and for the reasons of record" and, later in the same opinion, after saying that each of the claims "recites the automizing fluid as controlled 'in accordance with variations in the rate of fuel

supply,'" the Examiner continued: "Moreover if the quoted expression be given the meaning contended for by applicant claims 47 to 50 and 52 to 54 would clearly be unpatentable over Doble or Bryan."

Following the appeal to the Board, the Examiner in his statement of June 6, 1927, again referred to the reason for their rejection and again mentioned Doble and Bryan.

The Board of Appeals, however, seems to have proceeded upon the theory that the Examiner's decision as to these claims rested upon the proposition that "applicant cannot make claims 47–50," and reversed this holding, but followed the reversal with a decision of rejection in line with its own prior statement: "We find no good grounds why the claims 47–50 should not be rejected on Doble, notwithstanding Doble does not disclose the use of steam as an atomizing fluid. The use of steam as atomizing fluid is common and an example of such use is disclosed in the patent to Bryan of record."

The Doble patent is No. 1,279,674, issued September 24, 1918; that to Bryan, No. 1,316,680, issued September 23, 1919.

Appellant in his brief devotes much space to an analysis of the Doble patent, and a comparison of the parts thereof with his own claims in the effort to show that it is not an anticipation. It appears to be his idea that the Board rejected claims 47–50 upon Doble alone. It is true that there appears in the decision of the Board, following a statement relative to the Bryan specification, a sentence saying: "We do not regard Bryan as an anticipation of the claims against which it was cited by the examiner."

But there will be noted what was said by the Board concerning the Bryan patent, supra.

■ We think that whether regarded technically as an anticipation, or otherwise, the Bryan patent did regularly become a reference, and we discern no error in the rejection based upon Doble in view of Bryan.

The fifth assignment of error is: "That since rejected claims 47–50 were copied from McLean patent 1,610,303 the Board's action in upholding the rejection of these claims on the Doble patent is contrary to the rule of law established and cited in the decisions of In re Orcutt, 32 App. D. C. 345; 200 O. G. 582; and In re Cowles, 54 App. D. C. 280, 297 F. 539."

In its opinion, the Board said: "We find upon inspection of the file of the McLean patent that claims 2, 6, 7 and 9 were allowed

over the prior art, not because of any limited interpretation given to the words 'means for controlling the rate of supply of atomizing fluid in accordance with the rate of supply of fluid fuel,' but because of the limitation 'constant pressure' in the words 'means for supplying the atomizing fluid at a substantially constant pressure,' see discussion of these claims in applicant's remarks, page 3, filed with the amendment of February 9, 1926."

The cases cited in the assignment of error have been examined and it appears that the Court of Appeals of the District of Columbia did not reverse the Patent Office in either of them, because upon examination the court found no error in the office holding that the claims involved were not patentable.

The situation here seems to be analogous to that of those cases, and we are of opinion that the assignment of error on this point is not well taken.

Claim 53 is stated to be typical of the group embraced in numbers 53 to 56, inclusive: "53. In a steam boiler furnace, means for developing a motive pressure uniformly lower than and varying in inverse proportional relation with variations in the boiler steam pressure for controlling the supply of fluid fuel to the furnace, means for atomizing the fluid fuel with a fluid, means for controlling the rate of supply of atomizing fluid in accordance with variations in the rate of supply of fluid fuel, and means for varying the ratio of rate of supply of atomizing agent to the rate of supply of fluid fuel."

These claims were rejected by the Board as being anticipated by patent to Schroeder, No. 784,436, March 7, 1905, or Strait, No. 760,818, May 24, 1904.

The opinion of the Board of Appeals, as well as the different decisions of the examiners, give an explanation of the operations of the claimed mechanism which we do not deem it necessary to here restate. Appellant's analysis and comparison of the respective operations of his device and those of the references do not convince us that error is shown in the finding of the Board.

Appellant makes an insistence relative to claim 56 which involves the procedure and rules of the Patent Office. This is stated in his seventh assignment of error. It is contended that the Examiner in his rejection of claim 56 did not cite the Strait and Schroeder patents; that the Board did reject the claim upon these references, and that there was not a compliance with Patent Office Rule 139.

The claim which became No. 56 seems to have been added to the application on May 3, 1927, by amendment, after there had been a number of decisions by examiners upon other claims. It reads as follows: "56. The method of operating a furnace for which fuel is atomized by a fluid which consists in supplying the fuel at a rate which varies in accordance with the heat demand on the furnace, supplying the atomizing fluid at a constant pressure, and controlling the rate of supply thereof to the furnace in accordance with the rate of fuel supply."

In a decision of an Acting Examiner of May 7, 1927, it is said: "Claim 56 does not differ materially from claims 47 to 50 and is rejected for the same reason as these claims and the rejection made final."

In the Examiner's statement of June 6, 1927, following the appeal to the Board, no reference was made to claim 56, but on November 11, 1927, he made a supplemental statement in which he said: "The rejection of claim 56 is based on the same reasons as that of claims 47 to 50."

It will be remembered that 47–50 were the claims copied from the McLean patent, and we have heretofore quoted what seems to be the material portions of the decisions concerning them.

The Examiners seem to have classified claim 56 with claims 47–50 and to have rejected it for the reasons underlying their rejection, but in the decision of the Board, 56 seems to have been grouped with 53, 54, and 55, and the group is referred to throughout that decision as "claims 53–56."

Claims 53, 54, and 55 seem to have been first brought into the application by an amendment of March 17, 1927. The opinion of the Examiner of March 22, 1927, says: " * * * 52 to 54 are rejected as being for matter not disclosed," and " * * * further rejected on Strait or Schroeder." Also, as has been quoted, supra, this opinion mentions 52 and 54 along with 47 to 50 as "clearly unpatentable over Doble or Bryan." The first mention we find of 55 in any opinion is in that of an Acting Examiner under date of May 7, 1927, wherein it is said, " * * * and 53 to 55 are again and finally rejected on the art and for the reasons of record."

The Examiner's statement after the appeal to the Board says: "Claims 53 and 54 are similar to claims 47 to 50, are thought to be similarly inaccurate and similarly unpatentable over Doble. Claims 53 to 55 also stand rejected on Strait or Schroeder."

The Board's opinion says:

"We think claims 53, *56* can be made by the applicant, but that they are fully anticipated by the patents to Schroeder or Strait.

"The decision of the examiner holding that applicant cannot make claims * * * 53–*56* is reversed.

"The decision of the examiner rejecting claims * * * and 53–*56* on prior art is affirmed." (Italics ours.)

It appears, therefore, that the Examiner did not, in any decision, specifically cite Strait or Schroeder against claim 56, but rather held it unpatentable for matter not disclosed, or else as being anticipated by Doble in view of Bryan, while the Board held it, along with 53, 54, and 55, "anticipated by Schroeder or Strait."

The material portion of Rule 139 reads as follows:

"The Board of Appeals in its decision shall affirm or reverse the decision of the primary examiner only on points on which appeals shall have been taken (see Rule 133). Should it discover any grounds not involved in the appeal for refusing Letters Patent in the form claimed or in any other form, it shall include in its decision a statement to that effect and its reasons for so holding.

"This statement of the Board of Appeals, if adverse to the applicant's right to a patent, will reopen the case for amendment or showing of facts or both before the primary examiner responsive thereto—

"The applicant may waive the right to further prosecution before the primary examiner and have the case reconsidered by the Board of Appeals upon the same record. Where request for such reconsideration is made the Board of Appeals shall render a new decision which shall include all grounds upon which a patent is refused."

The decision of the Board from which we have quoted was rendered October 10, 1928. On October 24, 1928, applicant filed a request for rehearing in which he urged, relative to that tribunal's rejection of claim 56: "That such decision constitutes in effect a final rejection of this claim by the board on each of two references, neither of which has ever been previously cited against this claim by any patent office tribunal."

From an examination of this petition for reconsideration, we take it to have been a waiver by applicant of any right he had to further prosecution before the Primary Examiner. It would seem, in view of the record as we have recited it, that under the rule he would have been entitled to such a review, but

the rule also provides that an applicant may waive such right and have reconsideration by the Board itself, and this obviously is what applicant did.

It further appears that the Board complied with that part of the rule requiring a new decision. The second decision appears under date of November 6, 1928. In it the Board said:

"This is a petition for reconsideration and rehearing of appeal decided October 10, 1928. * * *

"In rejecting claims 53–56, as fully anticipated by the Schroeder or Strait references, the Board concurred in the rejection of these claims by the examiner's statement wherein the examiner said: 'Each of these patents shows a constant level fuel chamber, and means for exerting on the fuel therein a steam pressure inversely proportional to the boiler pressure. This pressure is effective to feed both the oil and steam to the burner, so that the steam may be said to be fed 'in accordance' with the rate of oil fed, in exactly the same sense as in applicant's device.' "

In so far as the matter of reconsideration by the Board is concerned, we should feel that the fact that in reconsidering the case there was not an oral rehearing, does not, of itself, sustain the contention of appellant that the rule was not complied with. When an applicant waives the right to have the claim referred back to the Examiner and accepts reconsideration by the Board, the rule does not make a rehearing mandatory; it only requires reconsideration *"upon the same record"* and the Board may exercise its sound discretion as to the procedure it will follow in this reconsideration, but in the instant controversy, the *decision* of the Board upon reconsideration does not seem to have cured a defect in its first decision relative to claim 56.

In its first decision claim 56 was rejected upon a reference not theretofore cited. This would have entitled applicant to have the claim again considered by the Examiner. He waived this right by filing a petition for rehearing before the Board itself. In its reconsideration the Board adhered to the reference, but in stating its reasons quoted language of the Examiner which appears to have been used by the latter as applicable to certain other claims, but not as to claim 56, and this was all that the Board gave as a reason. In its original decision it had given no reason but merely cited a reference which was new to the proceeding so far as claim 56 was involved.

In view of this confused condition we are of the opinion that applicant is entitled to have claim 56 re-examined and reconsidered by the experts of the Patent Office. The statements in the respective decisions concerning it are extremely meagre, and, since this court is not trained in these technical matters, and is expected to pass primarily upon questions of law only, we should not feel justified now in reversing the Board and directing a patent to issue based upon this claim, but a sufficient doubt has been created as that we do feel justified in remanding it for further study.

As heretofore indicated, we also deem it proper to remand claim 13 for restudy.

Therefore the decision of the Board is affirmed as to claims Nos. 47, 48, 49, 50, 53, 54, and 55, and reversed as to Nos. 13 and 56, this 'reversal being merely to the end that these latter claims be remanded for a reconsideration of them de novo, and such action upon them as may appear proper in the light of their restudy.

Modified and remanded.